# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Natalie Carnes,

                Plaintiff,

                                     Civ. No. 10-3005 (RHK/SRN)
                                     **MEMORANDUM OPINION
                                     AND ORDER**

v.

IndyMac Mortgage Services,

                Defendant.

---

Barton C. Gernander, Patrick Burns & Associates, Minneapolis, Minnesota, for Plaintiff.

David R. Mortenson, Wilford & Geske, PA, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

        This action arises out of a series of debt-collection phone calls Defendant IndyMac Mortgage Services, Inc. ("IndyMac") allegedly made to Plaintiff Natalie Carnes regarding her mortgage debt after she filed for bankruptcy. Carnes asserts two claims against IndyMac: (1) violation of the Bankruptcy Code's automatic stay, 11 U.S.C. § 362(a); and (2) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* IndyMac now moves to dismiss Carnes's claims. For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

## BACKGROUND

        Carnes obtained a mortgage to purchase her home in 2006. At all relevant times,

her mortgage was serviced by IndyMac. The loan application for Carnes's mortgage required her to provide some personal information, including her home telephone number at the time, which she did provide.

On June 26, 2009, Carnes filed for Chapter 7 bankruptcy. She listed IndyMac as a creditor on Schedule D of her bankruptcy petition and identified her mortgage debt in the amount of $136,953.99. (Compl. Ex. A.) Because it was listed as a creditor on the bankruptcy petition, IndyMac presumably received notice of the bankruptcy filing. After Carnes filed her bankruptcy petition, her mortgage went into default.

Following her bankruptcy filing, Carnes received a number of calls from IndyMac in which it attempted to collect her mortgage debt. Specifically, between July 14, 2009, and October 5, 2009, Carnes answered at least thirty-two such phone calls. Each of these calls was made to her cellular telephone. (Id. ¶ 16.) Each call was made from telephone number 800-781-7399, which Carnes believes is an IndyMac number. (Id. ¶ 39.) She also believes they were made using an automatic telephone dialing system. (Id.)

During the July 14, 2009, call, Carnes informed the IndyMac representative who contacted her that she had filed for bankruptcy, and she provided her bankruptcy case number. She also informed the caller that the phone number to which the call was made was her cellular telephone number, and she demanded that IndyMac cease calling her. Nevertheless, Carnes received additional phone calls from IndyMac, sometimes getting several calls on the same day.[1] On August 6, 2009, Carnes's attorney sent a notice to

---

[1] For instance, Carnes received two calls on July 21, three calls on July 31, and two calls on August 18. (Compl. ¶ 16.)

IndyMac, informing it of the bankruptcy petition and including a copy of the Notice of Chapter 7 Bankruptcy Case. (Id. Ex. C.) The phone calls continued, however; Carnes answered twenty calls from IndyMac between August 8, 2009, and October 5, 2009. Additionally, Carnes received two identical written communications from IndyMac—both dated August 17, 2009—regarding her default on her mortgage loan and informing her of her right to cure the default and the amount due. (Id. Exs. D, E.)

Carnes's bankruptcy petition was discharged on September 30, 2009. She then filed the instant action against IndyMac, asserting that contacting her after she had filed for bankruptcy violated § 362's automatic stay as well as the TCPA. She asserts that this Court enjoys subject-matter jurisdiction under 28 U.S.C. § 1331 because both of her claims arise under federal law. IndyMac now moves to dismiss, arguing that (1) the Court lacks subject-matter jurisdiction over both claims, and (2) even if there is jurisdiction over the TCPA claim, that claim fails as a matter of law.

## STANDARD OF REVIEW

Although IndyMac styles its Motion as one to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), its arguments for dismissal focus almost entirely on this Court's lack of subject-matter jurisdiction. Thus, the Court must determine whether it has jurisdiction over either of Carnes's claims.

Typically, motions to dismiss for lack of subject-matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1). Under that Rule, two types of jurisdictional challenges exist: "facial" attacks and "factual" attacks. See, e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Hastings v. Wilson, Civ. No. 05-2566, 2007 WL 333617, at *3

(D. Minn. Feb. 1, 2007) (Kyle, J.), aff'd, 516 F.3d 1055 (8th Cir. 2008). A facial attack, as its name suggests, challenges subject-matter jurisdiction solely from the allegations appearing on the face of the complaint. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In ruling on such a motion, a court must afford the non-moving party the same protections to which it would be entitled under Rule 12(b)(6). Id. By contrast, a factual attack depends upon the resolution of facts in order to determine whether subject-matter jurisdiction exists. Id. Because IndyMac's challenge does not depend on resolving any facts and arises at an early stage of the litigation—before IndyMac has answered—the Court treats it as a facial attack.

## ANALYSIS

There are two types of subject-matter jurisdiction in federal courts: diversity of citizenship and federal question. Federal-question jurisdiction, which is the only type at issue here, exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The 'well-pleaded complaint rule' provides that federal jurisdiction pursuant to section 1331 exists only when a federal question is presented on the face of the plaintiffs' properly pleaded complaint." QwestDex, Inc. v. Hearthside Rest., Inc., 376 F. Supp. 2d 931, 933 (D. Minn. 2005) (Doty, J.) (citing Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998)).

### I.  Automatic-stay claim (Count I)

Section 362 of the Bankruptcy Code (Title 11 of the United States Code) imposes an automatic stay when a bankruptcy petition is filed, prohibiting further debt-collection attempts against the debtor during the pendency of her bankruptcy case. 11 U.S.C. § 362.

4

Carnes claims that IndyMac violated the automatic stay because it continued to contact her in attempts to collect her outstanding mortgage debt after she filed for bankruptcy on September 30, 2009. See 11 U.S.C. § 362(a)(6) (prohibiting "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of [a bankruptcy case]"). Section 362(k)[2] protects against violations of the automatic stay by providing that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and, in appropriate cases, may recover punitive damages." 11 U.S.C. § 362(k)(1); Johnson v. Smith (In re Johnson), 575 F.3d 1079, 1083 (10th Cir. 2009). IndyMac argues, however, that the Court lacks jurisdiction over the automatic-stay claim because relief for violations of the stay may be sought only in Bankruptcy Court.

Congress has granted district courts jurisdiction to hear "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). However, the Bankruptcy Code allows a Bankruptcy Court to "hear and determine all cases under title 11 and all core proceedings[3] arising under title 11, or arising in a case under title 11," 11 U.S.C. § 157(b)(1), and it allows each district court to refer any or all such matters to the bankruptcy judges for the district. See 11 U.S.C.

---

[2] The automatic-stay-enforcement provision was formerly found at § 362(h), but has been renumbered to § 362(k); its language remains the same.

[3] "Core proceedings . . . are those which arise only in bankruptcy or involve a right created by federal bankruptcy law." Barsness v. Wilshire Credit Corp. (In re Barsness), 398 B.R. 655, 658 (Bankr. D. Minn. 2008) (citations omitted). A proceeding seeking damages under § 362(k) "is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1)" because the automatic stay is "a creature peculiar to federal bankruptcy law." In re Elegant Concepts, Ltd., 67 B.R. 914, 917 (Bankr. E.D.N.Y. 1986). IndyMac does not dispute that Carnes's claimed violation of the automatic stay is a core proceeding.

5

§ 157(a). A local rule accomplishes referral to this district's Bankruptcy Court, providing that "[a]ll bankruptcy cases and proceedings . . . are referred to the bankruptcy judges and shall be assigned among them." Minn. Loc. R. Bankr. P. 1070-1. Thus, bankruptcy cases and proceedings in Minnesota are automatically referred to the district's Bankruptcy Court. The issue before the Court here is whether an automatic-stay violation claim under § 362(k)(1) must be heard in Bankruptcy Court.

IndyMac relies on a Second Circuit case, Eastern Equipment & Services Corp. v. Factory Point National Bank, Bennington, 236 F.3d 117 (2d Cir. 2001), to argue that this Court lacks jurisdiction. In Eastern Equipment, the debtors sued in a federal district court alleging numerous state-law claims and violation of the automatic stay. 236 F.3d at 119–20. The court held that "[d]istrict courts simply lack jurisdiction to hear claims asserting violations of the automatic stay that sound in state law." Id. at 121 (citing MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 916 (9th Cir. 1996)). Carnes urges that Eastern Equipment is distinguishable because the claimed violations of the automatic stay in that case arose from state law. In the Court's view, this distinction is immaterial. A claim against a creditor for violating § 362(k) is an independent claim that need not be based on any other law, state or federal. Moreover, "such a claim *must* be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases." Id. (emphasis in original) (directly responding to the debtors' argument that they stated a claim under § 362(h) for violation of the automatic stay, giving rise to federal-question jurisdiction independent from their state-law claims).

6

The Second Circuit is not the only court to reach this conclusion. Rather, "[t]he weight of the authority supports [IndyMac's] argument." Heghmann v. Town of Rye, 326 F. Supp. 2d 227, 233 (D.N.H. 2004); accord Davis v. Courington (In re Davis), 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995) ("The bankruptcy court ha[s] subject-matter jurisdiction over all claims alleging willful violation of the automatic stay."); Halas v. Platek, 239 B.R. 784, 792 (N.D. Ill. 1999) ("[A] § 362[k] request for sanctions is within the exclusive jurisdiction of the bankruptcy court under § 1334(a).").

Moreover, the fact that Carnes's bankruptcy case has already concluded does not alter the Court's view. As the Tenth Circuit explained:

> It is particularly appropriate for bankruptcy courts to maintain jurisdiction over § 362(k)(1) proceedings because their purpose is not negated by dismissal of the underlying bankruptcy case. They still serve (a) to compensate for losses that are not extinguished by the termination of the bankruptcy case and (b) to vindicate the authority of the statutory stay.

Johnson, 575 F.3d at 1083 (citations omitted); accord Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline), 420 B.R. 541, 553 (Bankr. D.N.M. 2009) ("[T]he bankruptcy court has jurisdiction over certain matters after dismissal of a bankruptcy case, such as jurisdiction over a claim for willful violation of the stay."). Even though Carnes's bankruptcy case was discharged, she was not without recourse; "[she] could have moved to reopen [her] original bankruptcy proceeding to bring this claim." E. Equip., 236 F.3d at 121. The Bankruptcy Code permits reopening of cases to "administer assets" or "accord relief to the debtor for other cause," 11 U.S.C. § 305(b), and motions to reopen have been granted to allow debtors to seek relief for automatic-stay violations. E.g., In re Theokary, No. 07-11008, 2008 WL 5329310, at *2 (Bankr. E.D. Pa. Dec. 19, 2008) (reopening bankruptcy

7

case, noting "a cause of action seeking redress for violation of . . . the automatic stay is generally held to be within the exclusive jurisdiction of the Bankruptcy Court").

In light of this district's automatic-referral rule and the cases cited above, Carnes's claim for willful violation of the automatic stay under § 362(k)(1) should be brought in Bankruptcy Court rather than this Court.[4]

## II. TCPA claim (Count II)

### a. Subject-matter jurisdiction

Carnes also claims that IndyMac's conduct violated § 227(b)(3) of the TCPA, which is the only portion of the Act that creates a private right of action. The section provides:

> A person or entity may, if otherwise permitted by the laws of rules of court of a State, bring in an appropriate court of that State –
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(b)(3). Carnes asserts that the Court enjoys subject-matter jurisdiction over her TCPA claim under 28 U.S.C. § 1331 because the claim arises under a federal law—the TCPA. IndyMac responds that the Court lacks jurisdiction over the claim

---

[4] Carnes also argues that the interests of efficiency and judicial economy favor keeping both claims in the same court. However, in light of this Court's conclusion that it lacks jurisdiction over the automatic-stay claim, efficiency and economy cannot alter its decision to dismiss that claim.

8

because the language in § 227(b)(3)—"in an appropriate court of that State"—divests the Court of federal-question jurisdiction and places jurisdiction exclusively in the state courts.

The Circuits are split on whether federal-question jurisdiction exists over TCPA claims by individuals, and the Eighth Circuit has not yet addressed the issue. Six of the circuits to opine have concluded that district courts lack federal-question jurisdiction. Murphey v. Lanier, 204 F.3d 911, 915 (9th Cir. 2000); Foxhall Realty Law Offices, Inc. v. Telecommc'ns. Premium Servs., Ltd., 156 F.3d 432, 435 (2d Cir. 1998); ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513, 519 (3d Cir. 1998); Nicholson v. Hooters of Augusta, Inc., 136 F.3d 1287, 1289 (11th Cir. 1998); Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 514 (5th Cir. 1997); Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc., 106 F.3d 1146, 1156 (4th Cir. 1997); see also Percic Enter., Inc. v. European Autoworks, Inc., Civ. No. 09-3629, 2010 WL 2133563 (D. Minn. May 6, 2010) (Report & Recommendation of Nelson, M.J.), adopted by 2010 WL 2133236 (Davis, J.); Barry v. Dell Comp. Corp., No. Civ. 00-939, 2000 WL 34494809 (D. Minn. Oct. 18, 2008) (Davis, J.).

However, a more recent Seventh Circuit decision sharply criticizes this view. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 450–51 (7th Cir. 2005) (Easterbrook, J., joined by Posner, J. and Rovner, J.). And a dissent from then-Judge (now-Justice) Alito in ErieNet also supports federal-question jurisdiction over TCPA claims. See 156 F.3d at 521–23 (Alito, J., dissenting). After reviewing the conflicting views on the question, this Court embraces the position set forth in Brill. Finding no

9

more recent or more persuasive authority, the Court hereby adopts the reasoning of Brill and concludes that there is federal-question jurisdiction over the TCPA claim.

### b. Rule 12(b)(6)

Having concluded that the Court enjoys subject-matter jurisdiction over Carnes's TCPA claim, the Court must reach the remaining question of whether she stated a claim under that statute. IndyMac argues that the TCPA claim should be dismissed pursuant to Rule 12(b)(6). The Supreme Court set forth the standard for evaluating a motion to dismiss under that Rule in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. A "formulaic recitation of the elements of a cause of action" is not sufficient. Id. at 555. Instead, there must be sufficient facts set forth in the complaint to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 570. For purposes of a motion to dismiss, the Court takes all facts alleged in the complaint as true. Id. at 555–56. The complaint must be construed liberally, and any allegations or reasonable inferences arising from it must be interpreted in the light most favorable to the plaintiff. Id. at 554–56.

IndyMac argues that Carnes's TCPA claim fails because she expressly consented to being contacted on her cellular phone. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 564 (2008) ("Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls . . . made with the prior express consent of the called party."). It asks the Court to infer that Carnes

10

provided her cellular phone number because there is a phone number listed on her loan application (Compl. Ex. A), yet this conclusion is unsupported. Nothing in Carnes's Complaint or the application suggests that the number listed was her cellular phone number or that she ever consented to receiving calls on her cellular phone; in fact, she pleaded that she did <u>not</u> so consent. (Compl. ¶ 41.) "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground." <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Because nothing in the pleadings establishes that Carnes consented, this argument fails to provide grounds for dismissal under Rule 12(b)(6).

Additionally, IndyMac argued at some length during the December 14th hearing that the TCPA does not cover the phone calls at issue in this case because no "automatic telephone dialing system" was used.[5] Carnes pleaded, however, that she believes each call was placed "using an automated telephone dialing system." (Compl. ¶ 39.) Since nothing in the Complaint establishes that IndyMac did not use equipment covered by the TCPA, this argument also cannot support dismissal under Rule 12(b)(6). See <u>Jones</u>, 549 U.S. at 216.

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, it is

---

[5] The TCPA applies to callers who use a prerecorded voice or "automatic telephone dialing system," which the Act defines as a device with the ability "(A) to store or produce telephone numbers to be called using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). IndyMac argues that since its calls were not to randomly-generated numbers, it did not use such a device. Carnes responds that a pre-programmed "predictive dialer" system would still violate the TCPA. Yet none of the mechanical details asserted by either party appear in the pleadings or are properly before the Court at this juncture.

**ORDERED** that IndyMac's Motion to Dismiss (Doc. No. 2) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. With respect to the automatic-stay claim (Doc. No. 1, Count I), the Motion is **GRANTED**, and Count I of the Complaint is **DISMISSED WITHOUT PREJUDICE**; and

2. With respect to the TCPA claim (Doc. No. 1, Count II), the Motion is **DENIED**.


Dated: December 17, 2010                             s/Richard H. Kyle
                                                     RICHARD H. KYLE
                                                     United States District Judge